The next case is Scherzer versus, I can't read, Homestar Mortgage. The students are welcome to stay, the courtroom is open. Maybe they've heard enough. Okay, we'll hear from, oh, we have Amakai here too, okay, good. Mr. Weisberg, are you first?  Mr. Weisberg, on behalf of the appellants, the plaintiffs below, Scherzer. My client, Daniel Scherzer, an attorney, is sitting in the back of the room. To my right is Peter Weisberg, on behalf of the Scherzers, the plaintiffs' appellants. My client, Daniel Scherzer, is in the back of the room. To my right is Peter Weisberg from the Consumer Financial Protection Bureau, he is amicus With the court's leave, I would ask for five minutes opening, 15 minutes be deferred to amicus, and then five minutes of rebuttal. Okay. That's fine. Thank you, Your Honor. Your Honor, we are here today asking this court to determine effectively how a statute of limitations is told. Under the Truth in Lending Act, 1635F provides no explanation whatsoever as to how the statute of limitations is told. However, throughout that act, there is a notice provision which allows for the implementing regulations to govern, which allows rescission to be by mail or other means. In this case, that was precisely what is done. The circuits are split, and frankly, the appellee, specifically HSBC, as to the smaller loan, honored that request for rescission by mail. And yet, they stand here today. That doesn't shed any light on their legal duties. I mean, that might have been a business decision. Who knows why they made that decision? That doesn't help us decide the case, does it? Well, Your Honor, I think that would show that the statute is ambiguous as to what their legal duties are. Their own behavior, there's no indication that it was made for any other reason other than they felt that they had an obligation to rescind the smaller loan. You're hypothesizing, though, right? Is there any discovery in the record? There's no discovery at all because it was blown out at the early stage. All right, so they honored one, and then they challenged the other. That's correct, Your Honor. But how is it that the statute's ambiguous? I'm surprised you would be saying that. Well, the statute doesn't provide how the rescission is to be effectuated. 1635F does not. Well, Reg Z does. Regulation Z, which is the implementing regulation, specifically defines it. It says exactly how it should be done. Exactly. Exactly how it should be done. And the Consumer Financial Protection Bureau, which I'll call the Bureau from now on, not to be confused with the FBI, but the Bureau joins as amicus asserting exactly that. And this Court propounded a question a few days ago as to what is this Court's deference. And in the Chevron, which used to be called the Chevron 2 step, the Court had to determine first whether the statute was ambiguous. Here, we respectfully suggest that it clearly is. And if it is ambiguous, is the Bureau's determination, is the agency's determination reasonable? I thought your argument was the statute is unambiguous, and it unambiguously does not require the filing of a lawsuit. The Regulation Z is the implementing regulation of the statute 1635F. Regulation Z is unambiguous. But the statute itself doesn't require filing of a lawsuit to exercise the right of rescission. Correct, your Honor. What does it require? It doesn't say what it requires. Under different... It says how long it lasts. It says three years. And for certain, for rescission, three years, for damages, one year. And under 1635, I believe it's A and B. It talks about... Go ahead, your Honor. I'm sorry. Go ahead. It talks about that they're implementing regulations to govern, but Appellee tries to parse the statute to say that 1635F requires a strict... You can't review the implementing regulation. You can't review the Bureau's briefs. You can't review anything. You can only review Beach, the United States Supreme Court. We review it. We look at it. The question is whether we defer to it. Correct, your Honor. And fail to exercise our own discretion, if you will. How do you read Beach? In Beach, the United States Supreme Court, according to Appellee, announced a statute of repose. However, this Third Circuit in Ramadan, NRA Community Bank has said that that is not a statute of repose. But even if a statute of repose is announced, it doesn't matter because my clients met that statute of repose. But Beach... I mean, to my mind, Beach helps your case. It says that the provision says nothing in terms of bringing an action. But instead provides the right of rescission shall expire at the end of the time period. It talks not of a suit's commencement, but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. Isn't that of help to you in your case? I... You should say yes. I should say yes. Right over the plate. I mean, Cliff Lee could... I want to say yes, Your Honor. But I also want to be honest with the Court, which is that I don't know that Beach speaks to this issue in this case. Because in this case, whether there was a statute of repose in Beach or there was not a statute of repose, which the Bureau will speak to the statute of repose. All a statute of repose does is says, bam, the time limit comes down. It's not subject to equitable tolling. It ends. Boom. But, you know, what does that have to do with... That's precisely my point, which is why I'm not sure that Beach speaks to this issue. Because in this issue, if there is a statute of repose, which this circuit has said there is not, I understand it probably tries to distinguish those cases. But even if there is a statute of repose, my clients met the statute of repose by mailing the notice of rescission consistent with the clear mandate of Regulation Z, which is the implementing regulation for 1635F, which is the rescission regulation. Okay. Thank you. After five minutes. Thank you. You'll have to pick that up. Yes. Just a bit. Thank you, Your Honor. May it please the Court. Peter Wilson for the Consumer Financial Protection Bureau. Your Honor, the Bureau sees the case slightly differently from the Scherzer's. But under the plain terms of Section 1635 and its implementing regulations, a consumer is required to do one and only one thing to rescind a loan, and that is to notify their creditor in accordance with Regulation Z within three days or in some cases up to three years from the date of the transaction. You wrote us the letter that we just got, right, which says that this is the Bureau's position and we should defer to it. I think that's what it said, right? The letter took the view that in our view. It just came a day or two ago. Yes, that's right. And in our view, the statute is unambiguous with respect to, well, there's actually two questions presented here. The statute delegates authority to the Bureau to determine how a consumer exercises the right to rescind, and it then provides that the right to rescind expires within a maximum of three years. Have you ever explained why the Bureau takes that position as to the, you know, it has to be within the – it can go beyond the three years as long as they've given you the notice? You know, I think there's a lot to be said for your position that we should defer to the Bureau. But if we defer to the Bureau, there has to be a reason given by the Bureau, and the only reason that I can see is, well, this is good for the people. I don't know that there's any reason given for your position. Can you give us a reason? I mean, why one thing and not the other? Let me just make sure that I'm understanding the question correctly. Are you asking why the Court owes deference to the Bureau's interpretation of the Act? No. I understand why the Court owes deference. What I'm saying is if we are to give deference, shouldn't the Bureau have given us a reason why it takes that position? Sure, and I think the brief sets that out. The Congress wanted this mechanism to be a simple nondjudicial mechanism. It works in the three-day uncontested context, and it also works for up to three years in the contested context. But this is meant to be a nondjudicial mechanism where consumers notify the creditor and achieve the rescission, and then the parties unwind at the transaction without the courts needing to get involved. You're saying it's self-executed. It is self-executed. As I understand your argument, we should interpret the three-year period similarly to the three-day period. It should be interpreted in exactly the same way. So if the consumer sends a letter by midnight of the third day, it doesn't matter if the lender receives that letter five days later. The rescission is effective, and the lender has to honor it within 20 days after receipt. That's right. And you're asking us to just interpret the three-year period the same way. That's correct. And either party would be free. Let's say the rescission notice comes from the individual to the creditor, and the creditor disagrees, and the consumers stop paying. Anybody can always go to court to do whatever, but that's not part of rescission. That's exactly right, Your Honor. That's not part of the rescission. And, of course, in that circumstance, and I do want to just spend a moment on that, because some of the hypotheticals that have been spun out by the appellees and their amici seem to contemplate a sort of open-ended right of rescission, where these parties sit in legal limbo for an undefined period of time because a consumer has sent a notice, and then I suppose both sides ignore the notice and pretend like everything is all right. In reality, of course, what's going to happen is the consumer is going to stop paying. Litigation is going to ensue because the creditor rightly wants its money, believes it's entitled to its money. It's going to foreclose. It's going to sue. So there really is, as a practical matter, no reason to think that there's going to be some indefinite period of time when the parties are going to be uncertain as to their rights. Why three years? I mean, why not four? I'm not sure I understand the rationale for the agency, the Bureau's position. Well, the three-year timeframe was set by Congress. I'm not sure there's any answer in the legislative history as to why they seized on three as opposed to four. Certainly the desire of Congress was to limit the right of rescission to a defined period of time. We agree with that. We agree with the Court that it is a statute of repose. It cuts it off, as Your Honor mentioned, after three years. It's not tollable. It's not subject to some sort of delay. The consumer has up to three years to provide the notice to the creditor. You do agree it's a statute of repose. You just disagree over what is required within the three-year period. They say the lawsuit's required, and you say notice of rescission is required. Yes, that's right. It is a statute of repose, but that's really just a label. I mean, all the statute of repose means is that it's not tollable, as I say, that there's a defined period of time that's independent of the actions of the parties of some courts. All right, but if it is self-executing, then why do you square that with 1635G, which seems to indicate that the courts have the power to grant rescission? If it's self-executing, why does the court need to grant anything? Yes, 1635G contains language that is somewhat unhelpful to our position. Now, that provision was specifically intended to clarify that courts are allowed to award damages in cases where a consumer has had to go to court to file a lawsuit to enforce their rescission. I think the language is a little bit loose there. It's certainly not helpful to our side, but I think read fairly, all it is intended to do is to preserve the authority of the court, to clarify the authority of the court to award damages in one of these suits. Now, the reason that the court, that Congress, excuse me, put that provision into the statute was precisely because in cases where you're talking about a unilateral rescission, there is a real practical problem, and the problem is this. When there are two parties to a contract and one asserts a unilateral right to cancel the contract, the other can always defy the cancellation. It can simply say, I disagree. Now, Congress plainly in 1635A and B contemplates a scenario where the consumer has a unilateral right to rescind, to cancel. But as a practical matter, until the creditor exercises a release of lien, takes some steps as contemplated in 1635B, the creditor is going to remain protected because as a practical matter, its lien remains in place. The consumer cannot force the creditor actually to unwind the transaction. The consumer needs to go to court to get that to happen. Isn't there a risk, though, that the creditor immediately becomes unsecured upon the rescission notice being issued if it is in fact self-executed? No, because again, as a practical matter, the creditor's lien is going to remain in place if it refuses to unwind the transaction. And 1635B specifically contemplates that the consumer can rescind, but then there's a 20-day period where the creditor needs to take any steps necessary to reflect the termination of the security interest. So Congress clearly contemplated a period of time within which the consumer has rescinded, but there is still a lien in place. The creditor has not necessarily taken all the steps necessary. So in these instances where somebody two years into the loan just says, I'm really underwater, I want to get rid of this, and they really don't have a good reason to rescind, when they do send that self-executing rescission notice, you're saying the bank is still protected because its liens are in place and then it can go to the court and fight it out and say, well, we know we got this rescission notice, but it's invalid. There was no reason for it to be sent. Yes, that's exactly right. And, of course, in that instance, the consumer's notice is simply a nullity. It's a non-event. The consumer has sent a piece of paper. That's what's tautological about this, right? It's self-executing, but it's a non-event? It's a self-executing to the extent that the consumer has the right to rescind. Now, the effect of the notice may be unknown at the time that the consumer sends it to the creditor if the parties have a legitimate dispute. But it is self-executing in the sense that if the consumer has the right to rescind, it is effective at the date that it's delivered. That is the meaning of 1635a and b. Now, I would like to point the Court to the Williams decision in the Eleventh Circuit, which I think has been unfairly maligned by some of the cases, perhaps by the appellees in this case, because that's where this language about rescission is automatic comes from. That came from the Eleventh Circuit's case. If you actually read the case, it's quite clear that what the Court was saying is it is automatic in the sense that if the consumer has the right, all the consumer needs to do is to send the notice. It is then self-executing. It is not automatic in the sense that if the consumer received all the disclosures to which he is entitled, he can nevertheless get out from under a security interest. That is not the effect of a notice of rescission. Now, obviously, a bank that receives one of these notices and thinks that it is improper for some reason that the consumer received their disclosures or exercised it improperly, if the bank feels that that is the case, I might advise my client, if I were advising the bank, to confirm that in court. But the bank can simply sit on it, can ignore it, and then it takes the risk that a court may later conclude that actually the consumer didn't get the disclosures to which he was entitled and the transaction was rescinded effective as of the date of the delivery of the notice. But there may be a period of uncertainty there. But the hope is that the consumer says, I have a right to rescind. I wasn't given these disclosures. The bank looks back and determines that that's, in fact, the case. That's exactly right. Or they settle it. Maybe they extend the loan or do something else. But, I mean, the consumer doesn't go, Scott, free in this. They have to repay the loan. They do. That's correct. So, I mean, this is not something to be taken lightly where you just wave a rescission flag. If you do have the right to rescind, you're still going to have to get another loan to enable you to pay it back. 1635B sets out exactly what the consumer needs to do. And what it says is the creditor needs to take steps to reflect determination of the security interest. The consumer is not liable for finance or other charges. And once the creditor has released, then the consumer has an obligation under the statute to tender the proceeds. Now, the actual question of whether the consumers, in this case, can make that tender is not presented. Because the case, of course, was- A lot of times the money's gone, right? And that's going to be the sad reality. They don't have the money. Well, they're going to have to get a new loan. That's the whole point. Yes. I will say that they're supposed to tender the proceeds. But how can they tender it if the money's been spent on, you know, something else? Medicare. Well, again, the tender question is not presented in this case. But typically, yes, they would obtain refinancing. And I would remind the Court that although many of the cases, including this one that we are seeing today, arise in the context of the worst credit crisis in nearly 100 years, this statute was passed when credit was much more freely available. And, yes, refinancing was obviously the means by which consumers frequently were able to tender. But, again, the tender question is not raised here. And I do want to clarify for the Court, because I think there's been some confusion in the briefing, that we're not focused on when and whether the consumer may need to tender under 1635. The very narrow question here is, what does it mean to rescind within the meaning of 1635F? And what has to be done within three years. And what has to be done within three years. That's exactly right. Okay. So you would advocate that the Gilbert, that the Fourth Circuit had it right? We think the Fourth Circuit got it exactly right. And the Fourth Circuit made exactly the point that I was just making, which is that you don't want to confuse the question of what the consumer must do within the three-year period with the subsequent unwinding of the transaction and all the steps that need to take place and questions that may arise at that point. Now, I know the appellees have dwelled at some length on those questions, but those questions, again, are not really presented here. That's 678F at 277. It's interesting. In your letter, you pointed us to the Sanders opinion of the Tenth Circuit, where the court there seems to backpedal a little bit from, I mean, the issue isn't presented, but seems to backpedal from, was it Rosenfield? Rosenfield, that's right. And says that, you know, the delay rescission process makes it more expensive and transforms what Congress intended to be a private remedial scheme into a courthouse showdown, almost seems to be in a precedential opinion, going against the prior precedential opinion as to what needs to be done. Yes. I think there's no doubt that the Tenth Circuit has walked back some of the looser language in Rosenfield. Certainly, I think it's clear from the Tenth Circuit's opinion, certainly from the statute the Congress wrote, that what was intended was really to channel these cases to the extent possible outside of the judicial process. This was not meant to be necessarily litigated. That's right. The Sanders opinion, I think, is quite helpful in a number of respects. I would urge the court to read it. It's quite recent, and we cite it in our letter brief. Yeah. Good point. If the court has no further questions, thank you. We'll hear from Mr. Reitner. Did I pronounce it right? You did. Thank you. Henry Reitner for the appellees, Your Honors. You know, in 1998, well before Williams, this court did have the opportunity to speak to what Beach really meant. It's a case that was referenced by Mr. Weisberg in his argument, Ramadan. And there, Judges Nygaard and Sarika, along with Judge Katz, who was in the district court here, said this. The court in Beach held that Congress had explicitly linked the right and the remedy in this section, and therefore the right to sue expired at the end of the period. And that is 156 F3rd Act 505. And, of course, at least two members of this panel have since then mentioned in their briefs, that the right to sue is a three-year right to rescind. And, in fact, in Williams, the court, Chief Judge McKee and Judge Smith directly addressed Beach and found in these very facts that we have here that the right to rescind must be enforced, there must be a suit within three years. But that was a non-precedential. Non-precedential, but directly on point, certainly persuasive. The dictum in the other cases, of course, are informative. But, no, of course you're not bound by that. But I do think, and I would disagree with the comment that Judge Rendell made, whether she believes it or not, with regard to Beach. Beach phrased the question before it as this. The ultimate question is whether Congress intended that the right shall be enforceable in any event after the prescribed time. And then they found the answer, the nine justices unanimously, and Justice Souter writing, in this instance the answer is apparent from the plain language of 1635 F. And so they go on. But the right wasn't even asserted by the consumer until after three years. So that statute of repose comes down, and there was nothing they could do. Notification, affirmative defense, whatever. Bam, they're out of court. Absolutely. But, you know, the fact that if they had asserted it beforehand by writing a letter or whatnot and had not raised it in litigation, it would not have made a difference. The court doesn't say that. We don't know that. The court doesn't say that. That's the next case. That's this case. That is correct. So, I mean, they've agreed it's a statute of repose. So I think you've got a small victory there. Whether it gets you home, we'll see. But so can we focus on what needs to be done within three years? I see language that says notice needs to be given within three years, but I don't see language that says a lawsuit must be filed within three years. How do we get there? Well, we're looking at Section 1635 F, which says that the right shall expire. And I get there through reading Beach, as did the court in Williams, as did the court in Rosenthal and elsewhere, where the language goes, 1635 F takes us beyond any question whether it limits more than the time for bringing a suit by governing the life of the underlying right as well. Regulation Z, and Williams did not refer, the panel there did not refer to Regulation Z. If Regulation Z says that the right is exercised by notification, by mail, et cetera, et cetera, how do you do what you propose in light of Regulation Z? Do you throw it out? Do you say it's distinguishable? Do you say, yes, but it failed to address the fact that you also have to bring a suit? What do you do with Regulation Z? Well, I think there are two ways of addressing that. With Williams, they say it may be that mere invocation is enough to invoke the right to rescind, but you have to do more than that. No, but, I mean, Williams didn't even refer to Regulation Z. It was not even referenced at all. So here we have Regulation Z. So how do you reason with Regulation Z being what it is? Well, you're talking about the- That a suit needs to be brought when Regulation Z says you exercise it by doing this. Well, I would say that Regulation Z does not address when a suit needs to be brought. That's exactly right, and nothing does. So who says it has to be in three years? I think- Asked another way, perhaps, because I'm really interested in Judge Rendell's question. Is Regulation Z inconsistent with the statute? Is that your argument? Well, that would be an argument if you believe- that would be the argument if you believe that it speaks to the issue of when a suit needs to be brought. I don't believe that it does. And in that regard, the amicus brief which speaks to that is, at best, entitled to skidmore deference, and, frankly, having been raised- I'm not sure- I'm asking your question. I understand the answer. Fair enough. Are you arguing- I mean, I heard you say, well, that could be possibly one. Are you arguing, do you want us to write an opinion that says Regulation Z is inconsistent with the statute? If that is determinative, yes. But I don't believe that that is determinative of the question. They may have sent the notice- Even if it's not inconsistent. Absolutely. All right. Then how does that happen? Because Regulation Z seems to suggest that the transmittal of a notice is sufficient for the right to be exercised, as opposed to the filing of a lawsuit. Well, for one, it does not- I don't think that the statement that it's sufficient to exercise the right necessarily means that it negates that a lawsuit has to be brought within that three-year period. Again, if you go back to Beach- What says the lawsuit has- What says that it does? Is there something beyond exercise that has to be done by a lawsuit, and on what is that based? Well, I think Beach says that, frankly. For example, where it goes that 1635F talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy to be superfluous. That would help you if the party had tried to rescind within the three-year period, but otherwise it seems to be clearly in the realm of inapposite dicta. Well, I would argue to the contrary, I think. We write things all the time. Judges write things all the time in opinions answering the question presented, and sometimes the language in the opinions try to get removed from that particular context and put in another area. That seems to me to be what you're asking us to do with respect to Beach in light of the fact that there was no rescission, no dissent within the three years. Why is that wrong? Well, again, I think if you read the way that Beach has written, it subsumes within it the notion of bringing an action, the right having expired, it being a statute of repose, the remedy, the enforceability. Again, it goes back to the question of the ultimate question is whether Congress intended that the right shall be enforceable in any event after the prescribed time. And they hold that Congress manifest intent, which means you don't need to get to Regulations E, permits no federal right to rescind defensively or otherwise after the three-year period is run. Right. So if the three years runs, you can't send your rescission notice the day after the three years. That's what that tells us, right? Well, I think it tells us more than that because what the language of the decision indicates, which Gilbert says otherwise, but Rosenfeld and McGomey say, that suit needs to be brought within three years. It is subsumed in the rationale of Beach. And, again, interestingly, the Truth in Lending Statute does not have a statute of limitations for rescission otherwise. It seems to me that why would Congress enact the statute contemplating that, well, you can exercise the right to rescind within three years but not address, suppose you exercise it by sending a letter and that's sufficient, when do you need to bring suit? But they don't address that. And I think that that's an indication what was in everyone's minds. It's a statute of proposed. It's a three-year period. It's simple. It's straightforward. Everyone understands it. As opposed to I send a letter on year one. Does that mean that my timeline for bringing a suit ends at year two despite the three years? Well, presumably something's going to happen. Something's got to give. Either it will be recognized and the transaction gets undone or one side or the other is going to want to force the issue and say, wait a minute, you know, take the lien off. Here's the money. Or the lender's going to say, you know, you better keep paying because you really don't have a right to rescind. I mean something's got to give. But that doesn't mean of necessity that, you know, because we're not sure who's going to blink, that we require the consumer to bring the action within the three-year period, which is antithetical to what the whole idea of this rescission process is about, unless you take issue with Mr. Wilson's viewpoint as to what's behind the idea of the right of rescission, that it was supposed to be an informal. It's intended to be a private media scheme, not a courthouse showdown. Well, I think you need to in a sense, yes, because you need to parse the rescission concept. There is the unchallengeable right to rescind within three days of constantly being alone. I've decided that I'm not, I just didn't want to do this and I want out. And at that point, it's unchallengeable. Two years down the road, it is a totally different story. And in my own experience, these things are not necessarily resolved mainly on the, in private. It's litigation. In fact, we've got a lot of cases out there on the subject. It is a litigated issue after that three-year, three-day post-consummation period. Sorry, so you've got a policy argument there that may carry some weight, right? I mean, the policy argument is people are going to take advantage. They're going to see that they're underwater two years after and walk the loan. Would that be the softball? Yes. But that doesn't help you. It isn't that easy. They're going to have to give the money back. It doesn't, well, yeah. I mean, the bank is, it's a $400,000 mortgage and it's paid down to $350,000. The people are going to have to find $350,000 and give it back. The bank may love it. I don't know. Well, as a practical reality, we didn't have an offer of tender here and we're sitting here today. That's what I'm asking. Can you play out the practical realities here? What really happens? Does the person just then declare bankruptcy and you don't get your money? What happens? Here's what happens here. Now, of course, we're not a data trust state where a foreclosure sale could take place on the courthouse steps. We're in a situation where the typical situation is your borrower, for whatever reason, may have lost their job, divorce, whatever, that goes into default and the foreclosure process starts and it's not unusual for a human being to want to stay in their home as long as they can. So part of the process would be to send a rescission letter. A lot of times they actually bring a file in action in lieu of doing that. But send a rescission letter. Whether the bank gets it or not is one issue. Typically, I would say they do. Do they respond always? Not always, but typically they'll look at the transaction and say, no, this is a pure delaying tactic. We've looked at it. The finance charge is not overstated. And at that point, foreclosure starts. The borrower might file a preemptive case, might file, in this case, they actually filed a counterclaim for rescission in the foreclosure action. And a motion for summary judgment was pending there while this case has been proceeding. And to get to the ultimate point, at the end of the day, particularly in this market, there's not enough there to be able to tender. Isn't that usually the case? There won't be enough there. In today's market, absolutely. I would say in almost every case. All right, so you're losing money and you've got a policy argument that Congress could not have intended for people to just walk away. And this was passed in 1980. It may even go back to 1968, frankly. I thought this part was passed in 1980. Yes, that's right. All right, but none of that's of any avail on the textual analysis, right? I mean, all that might just mean Congress just imposed a world of hurt on the banking industry, the lending industry, right? Correct. So let's get back to the text. There's no requirement to file a lawsuit. We just have to infer that, I guess, from Beach, from the dicta in Beach and our NPO in Williams. And that's what you've got to offer us from a textualist analysis of this statute and this regulation and how they operate together. Well, in my six seconds left, I'm hoping the anarchists will offer you more then. Thank you. He has passed over to you.  Good morning. May it please the Court, my name is Kirk Jensen, and I represent the Amici Trade Association, the American Bankers Association, the Consumer Bankers Association, and the Consumer Mortgage Coalition. And I suspect it makes the most sense to just pick up where counsel just left off. You agree with his argument. I'm sorry? You agree with his argument. I agree with parts of it, Your Honor. Well, what part do you not agree with? Well, let me focus on the textual argument first of all, which Judge Hardiman was focusing on. Truth in lending is a comprehensive and intertwined scheme, and individual provisions have to be read in the context of the larger statute. And if we look at the different subsections of Section 1635, it becomes clear that what Congress meant by exercise the right of rescission was not simply submit a notice and that is all the consumer has to do. That may be true in the case of the three-day automatic rescission period, and that may even be true when the parties agree that the conditions for the extended period of rescission should be satisfied. But I would like to focus on just a couple of subsections here. Subsection A, the disclosure of the obligor's right to rescind. Congress stated that the disclosure that needs to be provided to the obligor, informing the obligor of the right to rescind, has to provide that the obligor, by notifying the creditor in accordance with the regulations of the Bureau, of his intention to do so. The notice submitted is merely a reflection of the intention of the obligor to exercise the right of rescission. It does not affect the right of rescission. And the regulation, Section 23 of Regulation Z, mirrors the language of subparagraph B, which says when an obligor exercises his right to rescind under subsection A of this section, he is not liable for any finance or other charge. So doesn't that say that A really says that's what you've exercised? By filing the notice, what you've done is you've expressed your intention to rescind. It doesn't say any more than that. Well, subsection A does not say any more than that, Your Honor. That's correct. But it's not the only subsection of 1635 that speaks to the issue of rescission. And Judge Hardiman correctly noted in subparagraph G that Congress said, in any action in which it is determined that a creditor has violated this section, a court may order the rescission, contemplating that there would be cases when the issue of rescission would have to come before a court. And we would submit that the extended right of rescission is not an automatic right. The language in truth and leniency becomes a little confusing because there is both an automatic right to rescind within three days, but then also an extended right of rescission for three years, but only if certain circumstances, if certain conditions are satisfied. But if A is automatic, how can you say that when you've said that it just refers to intent to do so? Well, A is not automatic unless beyond the three-day period, A is not automatic unless the material disclosures have not been provided. It is automatic for three days. But beyond three days, it is not necessarily automatic. I guess I'm having trouble understanding why you're saying that it's automatic or self-executing within three days when it uses the phrase intent to do so. You haven't really accomplished anything within the three days if you're just intending to do something. Well, if you intend to exercise a right that is automatic, I would submit that merely submitting the notice is enough to effectuate that right. But if you're intending to exercise a right that is conditional, simply submitting the notice without showing that the conditions have been satisfied is not sufficient to exercise the right. So are you saying that Regulation Z then is an unwarranted, an improper exercise of agency authority? No, Your Honor. I think that Regulation Z is consistent with subparagraph B, but the question is what does exercise mean? And the Tenth Circuit in Rosenfeld, I think, answered this question correctly. By exercising the right to rescind, it is a necessary requirement to submit the notice, but it's not a sufficient requirement to submit the notice. The notice starts the process, and if the right of rescission is automatic, that is enough to effectuate the process because it is an automatic right to rescission. But in the case of the extended three-year period, which is conditional and is only available if those conditions have been satisfied, then simply sending in the notice is not enough to exercise or to effectuate the right of rescission. It's only enough to exercise the right to start the process. Where in the statute or regulations is that argument supported? Well, I believe in subparagraph A and subparagraph G, Your Honor. It suggests that there will be – It doesn't say it. G says additional relief in any action in which it is determined that a creditor has violated the section. So there could be some litigation, but don't you think it would say in the action brought to enforce the right to exercise if it is found that the creditor has violated? I mean, this is pretty open-ended, is it not? Well, it is open-ended, Your Honor, but to go to the point that you made earlier about whether or not rescission was an informal process and one that was not intended to be a showdown in court, it clearly contemplates that there will be times when there needs to be a showdown in court. And one of those times would be when the conditions have not been satisfied. If the creditor – excuse me – if the obligor submits the notice and it's unclear that the obligor has satisfied the conditions, it's unclear whether or not the material disclosures have not been provided, it's unclear whether there's any right of rescission at all. And a decision-maker has to make the decision as to whether or not the right even exists. And in that case, the court would have to be involved. Why put the onus on the consumer to be required to bring an action in three years? Why not have the lender, who is not sure if it's been violated, sued to say there is no right of rescission? Well, I think that that's a legitimate policy question, but regulation – excuse me – truth in lending only speaks to an obligor's obligation to bring – or to exercise the right of rescission. It does not speak to a lender's obligation to file a lawsuit. The only lawsuit that is contemplated in truth in lending is the lawsuit brought by the borrower. But don't you think – I mean, truth in lending is very consumer-oriented. Don't you think if you're supposed to bring a lawsuit within three years that they would have said that somewhere, that that's a requirement? I mean, that's – whether it's a statute of repose or a limitation, something's got to say that, does it not? Well, Your Honor, I think that the broader context of 1635 does say that, especially in the conditional right of rescission period, because – Where is that? What's the conditional right of rescission period to which you've been – Well, it's in subparagraph A, Your Honor. The borrower has three days to rescind unless the material disclosures are not provided. Then the period – the right of rescission period is extended beyond the three days, and then subsection F cuts that off at three years. So it can continue throughout that three-year period as long as those material disclosures have not been provided. But once we get to the three-year point, Congress made the decision to cut off the right of rescission. It just seems very incongruous to read the three-day period disparately from the three-year period. Well, I think that goes to the history of the statute, Your Honor. This rescission period was put into place because of concerns about home improvement lending. And the Bureau's amicus brief at page 4 touches on this briefly. The concern was that borrowers were giving security interests in their home to home improvement contractors, sometimes in high-pressure sales tactic contexts. And Congress wanted to provide a cooling-off period for consumers to really think about whether or not they wanted to give a security interest in their home in those situations. And that is extended if the material disclosures are not provided or not provided accurately on the premise that if the borrower didn't get the right information, the borrower should still get time to think through the implications of giving the security interest. But that's why it's a three-day period. It's meant to be merely a cooling-off period, so that when the contractor leaves the borrower's home, the borrower has an opportunity to consult with family, attorney, whoever, and think through this and think about whether this is really a transaction I want to enter into. So it was intended to be three days, but only extended if certain conditions apply. And it's only if those conditions have been satisfied that the right of rescission extends beyond three days. But Congress chose to cut that off at three years because, as the Beach court noted, the extended right of rescission, if it were not to be cut off, would result in a cloud on title. And that's a very significant problem, not only for the lender, but for the entire housing market as security interests and notes are transferred in the secondary market. Give us a policy reason why we should decide for you. I've listened and listened, and I couldn't really see why should we decide your way. The policy reason, Your Honor? Yeah. Well, I think there are a number that we laid out in our amicus brief, but one that I think is in the self-interest of the court system is that if a borrower can effectively exercise the right of rescission in the way that appellants and the Bureau have suggested, lenders will have no choice but to file a lawsuit to establish that the notice was invalid every time it happens. And it's our clients' and their members' experience that the vast majority of these rescission notices are not filed in cases where they come within three days of a refinancing, but they come within a few weeks before a foreclosure or a bankruptcy as the borrower is seeking to delay that proceeding. And if I could turn to the Bureau. They could inflict the same pain on your clients, your members, by filing a lawsuit. But they would only file the lawsuit if they could find an attorney who thought they had a valid claim and actually had a chance of prevailing. Without there being some sort of financial disincentive to bring a lawsuit that lacks merit, that is true. They could bring those suits, but there is a significant financial disincentive for doing so. But the lender will have no choice. If the lender wants to continue with a valid security interest and avoid all of the implications that an invalid security interest may create, like reporting in SEC filings, in reserving against the loan, they need to be sure that their security interest is valid. They'll have no choice but to file a lawsuit every time in order to invalidate even the most facially frivolous rescission notices. Because the mere filing of the notice could be raised later in any effort to exercise the security interest, even many years beyond the three-year cutoff in 1635, to challenge the validity of the security interest. It's a very significant impact on the financial services industry and the housing market. Thank you. Thank you very much. I think you have rebuttal. We do, Your Honor. May we split rebuttal, two and a half minutes? No, we don't usually split rebuttal. Then, Your Honor, Judge Hardiman, you had asked a question. What are the practical implications of what happens in a TILA action? What happens in a TILA action are one of two things. As Your Honors have indicated, that the market has collapsed and people have lesser ability to tender. The district judge, what happens is generally they send out a request for admission which says, can you tender or you cannot tender? And then if that is answered in the affirmative, that you cannot tender, the district judge then makes a decision. Number one, is this lawsuit invalid? And a large percentage of the time the lawsuits are blown out without any. Why? Because of the inability to tender as required by the statute. In the second instance, the case law has said that the judge can, if there are equitable reasons, for example, if there's a fraud that brings about the origination of the mortgage, if there's some other equitable reasons, the court can condition tender based on, for example, the maximum monthly payment available to the consumer and the lender. So in neither situation is there this world of pain for the lenders. And to counter what. Well, maybe the pain is just having to litigate every mortgage issue that ends up being unpaid. I mean, that's, you know, legal fees are not a drop in the bucket. No, they're not. However, I believe in the Beach opinion, and I'm doing this strictly from memory, I think there's a footnote that, I think it might even be footnote six, but I'm not 100% sure, that talks about how the Supreme Court is not setting a statute of repose for a claim in recruitment, a claim for defense. And they leave that to the state, the statutes and limitations for recruitment in response to a foreclosure, as an affirmative defense to the foreclosure. I mean, but doesn't this problem ultimately hurt the consumers? Because, I mean, these companies, banks, any other businesses, they just find a way to pass these costs on to the next transaction, right? Does this ultimately hurt the consumers, the Truth in Lighting Act? No, I mean, this situation, if we rule in your favor and it does result in an increase in the efficacy or the frequency of these rescission notices, I mean, I understand this is the world of policy now, but doesn't, you know, the whole notion of, you know, pain, I mean, I know businesses are pretty astute about, you know, when they suffer a little pain, they find a way to pass it on to their customers. That's the way the world works. Well, your honors are not deciding whether or not there's, you could still send a notice of rescission, even if your honors decide against us, the notice of rescission can still be sent within the three years. So the, the. Well, it has to be. No, but they're going to have to file a lawsuit. They'd have to file a lawsuit. That's correct, your honor. And I don't see how forcing the consumer to file the lawsuit when, as in this exact same case, the appellee HSBC made that business decision and resolved it without litigation. So maybe they thought you'd refrain from causing the reason why we're here today. If they play ball with you on one loan. Well, to answer the, to counter the amicus argument, I've never, having represented consumers, I have never seen a lender file a lawsuit to declare that the notice of right to rescind is, is invalid and that their lien is somehow valid. So. It's all a question of where's the money? Do they have the money? The question, your honor, I'm telling you, their request for admission goes out and the district court blows it out a large percentage of the time, unless there's an equitable reason to condition repayment. And if there is that equitable decision to condition repayment, then the bank is repaid. It may be over a longer term, but how is that any, how is that policy argument, for example, any better than the bank having to foreclose and get, get a house years later that's upside down and their loan won't be paid off then and the house will be worth 50% the value? The, if you're, if the court is trying to balance the balance, as is been consistently the opinion of this court and of all courts in the country in uniformity, this statute is to be hyper-technically construed, strictly against the lender in the most liberal way in favor of the consumer. How do you respond to Mr. Jensen's argument that we're required to interpret statutes, not in isolation, but as a whole and in context? In context, the, the, that argument is a fair argument, but the, the statute itself breaks down into three different sections, three different remedies, rescission, damages, and recruitment, and to try to meld all those into one statute of limitations, when in fact the statute itself gives different statutes of limitations for each of those remedies. Recruitment has no statute of limitations. If raised defensively in a foreclosure, rescission will be what this court says it is, and damages is one year. So how, how could you, how could, how could the, how could, how can it be taken into context if it's specifically set, set by, but, but nonetheless. Well, he points to the fact that it says in A, intent, intent to exercise the right. If you are to take it into context, then 1635A would say notice of intent, notice of intent. That's all that's required. So in either context, Mr. Jensen's argument respectfully is, is, is in favor of the consumer. So you'd read intent to say I'm doing it as compared to I'm going to do it in futuro. Right. That's right. And I think in the Sixth Circuit McCoy v. Harriman case, the, the, the Sixth Circuit said Beach doesn't say how, it just says when, essentially. It doesn't say how to effectuate the rescission. And in this situation, the statute itself, if taken into context, talks about a notice of rescission. The Regulation Z talks about a notice of rescission. And, and Anika, Anikus, the Bureau, talks about a notice of rescission. And, and that is the answer. Thank you. Thank you. Well, we will take this policy issue under advisement, which the Mace of Congress have told us what it meant. But it doesn't always, doesn't usually. Thank you. Thank you.